1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10    ROBERT DUANE FRANKLIN,

11                 Plaintiff,                      No. 2:07-cv-2259 FCD KJN P

12          vs.

13    G. DUDLEY,

14                 Defendant,                      FINDINGS AND RECOMMENDATIONS

15    _____/

16    I.  Introduction

17                 Plaintiff, a state prisoner proceeding without counsel, seeks relief pursuant to 42

18    U.S.C. § 1983.  Plaintiff alleges that he received inadequate medical care in violation of the

19    Eighth Amendment.

20                 Pending before the court is defendant Dudley's summary judgment motion filed

21    July 30, 2010.  (Dkt. No. 69.)  On October 27, 2010, plaintiff filed his opposition.  (Dkt. No. 82.)

22    On November 3, 2010, defendant filed a reply.  (Dkt. No. 83.)

23                 After carefully considering the record, the undersigned recommends that

24    defendant's motion be granted in part and denied in part.

25    ////

26    ////

                                                 1

1  II.  Legal Standard for Summary Judgment

2          Summary judgment is appropriate when a moving party establishes that the

3  standard set forth in Federal Rule of Civil Procedure 56(c) is met.  "The judgment sought should

4  be rendered  if . . . there is no genuine issue as to any material fact, and that the movant  is

5  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

6                  Under summary judgment practice, the moving party
                   always bears the initial responsibility of informing the district court
7                  of the basis for its motion, and identifying those portions of "the
                   pleadings, depositions, answers to interrogatories, and admissions
8                  on file, together with the affidavits, if any," which it believes
                   demonstrate the absence of a genuine issue of material fact.
9

10  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

11  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

12  in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

13  file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and

14  upon motion, against a party who fails to make a showing sufficient to establish the existence of

15  an element essential to that party's case, and on which that party will bear the burden of proof at

16  trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the

17  nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such a

18  circumstance, summary judgment should be granted, "so long as whatever is before the district

19  court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

20  satisfied."  Id.

21          If the moving party meets its initial responsibility, the burden then shifts to the

22  opposing party to establish that a genuine issue as to any material fact actually exists.  See

23  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

24  establish the existence of such a factual dispute, the opposing party may not rely upon the

25  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

26  form of affidavits, and/or admissible discovery material, in support of its contention that the

2

dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party

need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary

judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts . . .  Where the record taken

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

III.  Legal Standard for Eighth Amendment Claim

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show (1) that his medical needs were objectively serious; and (2) that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 299 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."  Hudson v. McMillian, 503 U.S. 1, 4 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Indications that a prisoner has a serious need for medical treatment are the following:  the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989); McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court  defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835.  However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient.  Id. at 836-37.  Moreover, it is not sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk.  Id. at 842.

It is nothing less than recklessness in the criminal sense—subjective standard—disregard of a risk of harm of which the actor is actually aware.  Id. at 838-42.  "[T]he

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42. However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

However, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir. 1985). Of note, although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-40 (9th Cir. 1990), and Hudson, 503 U.S. at 4-6. A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." McGuckin, 974 F.2d at 1061.

1     Superimposed on these Eighth Amendment standards is the fact that in cases

2  involving complex medical issues where plaintiff contests the type of treatment he received, or

3  lack thereof, expert opinion will almost always be necessary to establish the necessary level of

4  deliberate indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).  Thus,

5  although there may be subsidiary issues of fact in dispute, unless plaintiff can provide expert

6  evidence that the treatment he received equated with deliberate indifference thereby creating a

7  material issue of fact, summary judgment should be entered for the defendant.  The dispositive

8  question on this summary judgment motion is ultimately not what was the most appropriate

9  course of treatment for plaintiff, but whether the failure to timely give a certain type of treatment

10  was, in essence, criminally reckless.

11  IV.  Discussion

12     A.  Undisputed Facts

13     Plaintiff suffers from osteoarthritis, chronic lower back pain and navicular

14  avascular necrosis.  In addition, he lost part of his colon and one kidney due to gunshot wounds

15  and walks with a cane.

16     During all relevant times, defendant Dudley worked as a physician's assistant at

17  High Desert State Prison ("HDSP").  A physician's assistant works under a physician's license

18  and supervision.  Just as a physician would do, a physician's assistant renders medical care to a

19  patient.  Defendant Dudley was qualified to diagnose and treat illnesses.  Defendant Dudley

20  could also prescribe any medication that she was allowed to provide by her supervising

21  physician.

22     On February 13, 2007, plaintiff transferred to HDSP from Folsom State Prison.

23  On March 22, 2007, defendant Dudley saw plaintiff in order to follow-up with the medication

24  plaintiff had been taking at Folsom.  While at Folsom, plaintiff had been prescribed Tramadol, an

25  opiate, for pain.

26     On March 22, 2007, HDSP had a policy that narcotic pain medications were not

6

available to inmates in the general population, such as plaintiff.[1]  Tramadol fell under this prohibition.  Accordingly, inmates at HDSP could obtain narcotic pain medication only if they were sick enough to be housed in the Correctional Treatment Center ("CTC"), the prison hospital.  Plaintiff did not qualify for housing in the CTC.  This policy was formulated by Chief Medical Officer Roche.

Pursuant to this policy, on March 22, 2007, defendant Dudley told plaintiff that she could not prescribe Tramadol for him.  On March 22, 2007, defendant Dudley consulted with the Chief Medical Officer and was instructed not to give plaintiff Tramadol.  Had defendant Dudley disobeyed the policy, she could have been fired.

On March 22, 2007, defendant Dudley offered plaintiff Motrin, Naprosyn or Tylenol.  There is an undated note in plaintiff's medical chart indicating that Motrin previously prescribed to him had been stopped because it caused plaintiff to suffer gastrointestinal bleeding. The same note states that plaintiff was taking 30-40 Tylenol per day.  This quantity is an unsafe dosage.

Later in 2007, after defendant's last contact with plaintiff, HDSP hired a new Chief Medical Officer.  The new Chief Medical Officer changed the policy to allow for the prescription of narcotic pain medication to the general prison population.  However, plaintiff did not receive narcotic pain medication until he was transferred from HDSP.

////

////

---

[1]  In his opposition, plaintiff argues that no such policy existed.  In support of this claim, he refers to the declaration of inmate Fred Leon Jackson who claims that from February 2007 through September 16, 2008, he was housed in the HDSP general population and received narcotics.  (Dkt. No. 75, at 11 of 33.)   As noted by defendant, this declaration shows that one inmate somehow obtained narcotic pain medication while in the general population.  How and why he got the narcotics and from whom is not explained.  This declaration does not raise a triable issue of fact regarding whether the policy existed prohibiting inmates in the HDSP general population from being prescribed narcotics.

1       B. <u>Analysis</u>

2       Plaintiff raises two claims against defendant Dudley.  First, plaintiff argues that

3 defendant Dudley acted with deliberate indifference to plaintiff's serious medical needs on

4 March 22, 2007, when she failed to prescribe Tramadol, which plaintiff had previously received

5 at Folsom State Prison.  In support of this claim, plaintiff argues that the drugs defendant Dudley

6 offered in the alternative were not effective to treat plaintiff's pain.  Second, plaintiff contends

7 that the drugs defendant Dudley offered in the alternative were medically unacceptable because

8 plaintiff had only one kidney.

9       Defendant moves for summary judgment on two different theories of qualified

10 immunity.

11       Under the first theory, "[t]he doctrine of qualified immunity protects government

12 officials from liability for civil damages insofar as their conduct does not violate clearly

13 established statutory or constitutional rights of which a reasonable person would have known."

14 <u>Pearson v. Callahan</u>, 555 U.S.223,  ___, 129 S.Ct. 808, 815 (2009).  The defendant bears the

15 burden of establishing qualified immunity.  <u>Crawford-El v. Britton</u>, 523 U.S. 574, 586-87 (1998).

16       The Supreme Court in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), outlined a two-step

17 approach to qualified immunity.  The first step requires the court to ask whether "[t]aken in the

18 light most favorable to the party asserting the injury, do the facts alleged show the officer's

19 conduct violated a constitutional right?"  <u>Saucier</u>, 533 U.S. at 201.  If the answer to the first

20 inquiry is yes, the second inquiry is whether the right was clearly established: in other words,

21 "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation

22 he confronted."  <u>Saucier</u>, 533 U.S. at 201.  In <u>Pearson v. Callahan</u>, the Supreme Court held that

23 "judges of the district courts and the courts of appeals should be permitted to exercise their sound

24 discretion in deciding which of the two prongs of the qualified immunity analysis should be

25 addressed first in light of the circumstances in the particular case at hand."  555 U.S. at ___, 129

26 S.Ct. at 818, 821.

1    In determining whether the law was clearly established, the inquiry focuses on the

2    precise circumstances of a particular case as well as the state of the law at the time of the alleged

3    violation. Fogel v. Harris, 531 F.3d 824, 833 (9th Cir. 2008). "We engage in an 'objective but

4    fact-specific inquiry.'" Id., quoting Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007). The

5    standard is objective. Id.

6    The undersigned first considers whether taken in the light most favorable to

7    plaintiff, do the facts alleged show that defendant's conduct violated a constitutional right.

8    Defendant argues that in denying plaintiff Tramadol, she did not act with deliberate indifference

9    because she was following the policy that prohibited her from prescribing narcotics and that she

10   offered plaintiff alternative pain relievers.

11   Plaintiff has not offered any expert evidence that the drugs offered in the

12   alternative were not appropriate based on the fact that he had only one kidney. Plaintiff's own

13   opinion is not sufficient evidence to support this claim. For these reasons, the undersigned does

14   not find that plaintiff has met his burden as to this claim. Accordingly, defendant Dudley should

15   be granted summary judgment as to plaintiff's claim that the alternative drugs defendant Dudley

16   prescribed were not appropriate for someone with only one kidney.

17   However, plaintiff's failure to provide expert evidence does not end the entire

18   inquiry. It is undisputed that plaintiff had serious medical problems. It is clear from the record

19   that these medical problems caused plaintiff to suffer great pain, as he was prescribed Tramadol,

20   a narcotic pain reliever, by a physician at Folsom State Prison. Defendant's decision to deny

21   plaintiff the strong pain medication he had previously been prescribed was not based on an

22   assessment of his medical needs but pursuant to the no-narcotics policy.

23   Moreover, the record demonstrates that the drugs offered by defendant Dudley in

24   the alternative had not been effective in treating plaintiff's pain in the past. It is undisputed that

25   plaintiff's medical chart indicated that he had previously been prescribed Motrin but the

26   medication was stopped because it caused plaintiff to suffer gastrointestinal bleeding. The same

1   note states that plaintiff was taking 30-40 Tylenol per day.  At his deposition, plaintiff testified

2   that the reason he took so many Tylenol was "that is the only way that it was helping me."

3   (Plaintiff's Deposition, at 23.)  At his deposition, plaintiff also testified that on March 22, 2007,

4   he told defendant Dudley that "you must not be reviewing my file because [Tylenol] is not going

5   to do nothing.  This is not going to do nothing for me."  (Id.)

6           Taken in the light most favorable to plaintiff, these facts demonstrate that

7   defendant violated plaintiff's right to adequate medical care by failing to prescribe Tramadol.

8           Having found that the facts demonstrate that defendant Dudley violated plaintiff's

9   Eighth Amendment right to adequate medical care when she refused to prescribe Tramadol, the

10  undersigned next considers whether it would have been clear to a reasonable physician's assistant

11  on March 22, 2007, that denying plaintiff Tramadol pursuant to the no-narcotics policy was

12  unlawful.  Defendant argues that there is no clearly established law holding that defendant's

13  upholding the no-narcotics policy and prescribing alternative pain medication is unconstitutional.

14          In essence, defendant argues that plaintiff does not have a clearly established right

15  to narcotics.  Defendant's characterization of the issue is incorrect.  Rather, the issue is whether

16  plaintiff had a clearly established right to adequate pain relief.  Clearly, in March 2007 plaintiff

17  had a constitutional right to adequate pain relief.  Based on the present record, the undersigned

18  finds that it would have been clear to a reasonable officer that denying plaintiff Tramadol, which

19  had previously been prescribed by a doctor at Folsom State Prison, and instead prescribing pain

20  medication which the medical records suggested were ineffective, was unlawful.  Plaintiff's

21  claim that he allegedly told defendant Dudley that Tylenol did not work supports this finding.

22  For these reasons, defendant is not entitled to summary judgment based on this theory of

23  qualified immunity.

24          Under the second theory of qualified immunity, defendant argues that she is

25  immune because she was following a policy.  The Ninth Circuit has found that a defendant is

26  entitled to qualified immunity if he or she acts pursuant to official prison policies if the policies

1  are not "patently violative of constitutional principles."  Brown v. Mason, 288 Fed.Appx. 391,

2  392-93 (9th Cir. 2008).  "[W]hen a public official acts in reliance on a duly enacted statute or

3  ordinance, that official ordinarily is entitled to qualified immunity."  Dittman v. California, 191

4  F.3d 1020, 1027 (9th Cir. 1999).  However, reliance upon a statute, regulation, or official policy

5  does not render the officer's conduct per se reasonable.  Dittman, 191 F.3d at 1027.  The

6  existence of a statute or ordinance authorizing particular conduct is a factor that militates in favor

7  of the conclusion that a reasonable official would find that conduct constitutional because

8  officers are ordinarily entitled to rely on the assumption that the legislature has considered the

9  views of legal counsel and concluded that the regulation or policy is a valid and constitutional

10  exercise of authority.  Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir. 1994).

11  However, qualified immunity will not be granted to a public official who enforces a statute,

12  regulation, or policy that is "patently violative of fundamental constitutional principles."

13  Grossman, 33 F.3d at 1209.

14           A blanket policy denying narcotic pain medication to inmates in the general

15  population regardless of medical need is unconstitutional.  Under such a policy, inmates with

16  serious medical needs requiring narcotic pain medication are denied adequate pain medication.

17  Such a policy demonstrates deliberate indifference to serious medical needs.  See McElligott v.

18  Foley, 182 F.3d 1248, 1257-58 (11th Cir. 1999) (reversing summary judgment for defendants

19  who gave an inmate Tylenol instead of more effective pain medications); see also In Estate of

20  Clutters v. Sexton, 2007 WL 3244437, at *10 (S.D. Ohio Nov. 2, 2007) (district court denied

21  summary judgment to the defendant county after finding that the county policy prohibiting all

22  narcotics without any determination of an individual prisoner's need resulted in a denial of

23  medical care); Scott v. Campbell, 2009 WL 3028306 (N.D. Fla. 2009) (district court denied

24  summary judgment to the Sheriff, finding that his policy of disfavoring narcotic medication to

25  prisoners in jail, even when medically indicated, resulted in deliberate indifference to the

26  plaintiff's serious medical needs); cf. Tabb v. Veazey, 2007 WL 951763 (N.D. Ga. March 28,

1  2007) (district court found that a policy of denying narcotics to inmates in the jail was not

2  unconstitutional because it "did not deny detainees and prisoners the right to obtain [effective]

3  non-narcotic drugs").[2]

4         Accordingly, for the reasons discussed above, defendant is not entitled to qualified

5  immunity as to plaintiff's claim that she violated his Eighth Amendment rights when she

6  enforced the no-narcotics policy by refusing to prescribe Tramadol.[3]

7         Accordingly, IT IS HEREBY RECOMMENDED that defendant's summary

8  judgment motion (Dkt. No. 69) be granted as to the claim that the drugs she prescribed were

9  inappropriate for someone with only one kidney; and defendant's motion should be denied in all

10  other respects.

11         These findings and recommendations are submitted to the United States District

12  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

13  one days after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

16  objections shall be filed and served within fourteen days after service of the objections.  The

17  parties are advised that failure to file objections within the specified time may waive the right to

18  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19  DATED:  December 28, 2010

20  _____
    KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

21

22  frank2259.sj(2)

23     [2]  Although a number of the cited cases are post-March 2007, they were not articulating
new developments in the law.

24

25     [3]  While the undersigned recognizes that defendant Dudley, as a physician's assistant,
may have been in a difficult position because of the no-narcotics policy, as a medical provider
she could not merely rely upon following a policy when following it, as here, would result in

26  denying plaintiff necessary pain medication.