IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT DUANE FRANKLIN,

    Plaintiff,                  No. 2:07-cv-2259 KJM KJN P

    vs.

G. DUDLEY,                           <u>AMENDED</u>

    Defendant,              <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

        Plaintiff, a state prisoner proceeding without counsel, seeks relief pursuant to 42 U.S.C. § 1983. Plaintiff alleges that he received inadequate medical care in violation of the Eighth Amendment.

        Pending before the court is defendant Dudley's summary judgment motion filed July 30, 2010. (Dkt. No. 69.) On October 27, 2010, plaintiff filed his opposition. (Dkt. No. 82.) On November 3, 2010, defendant filed a reply. (Dkt. No. 83.) On December 29, 2010, the undersigned recommended that defendant's motion be granted in part and denied in part. (Dkt. No. 85.) On January 24, 2011, defendant filed objections. (Dkt. No. 91.) After reviewing defendant's objections, the undersigned issues these amended findings and recommendations in order to address issues raised in defendant's objections.

After carefully considering the record, the undersigned again recommends that defendant's motion be granted in part and denied in part.

II. Legal Standard for Summary Judgment

Summary judgment is appropriate when a moving party establishes that the standard set forth in Federal Rule of Civil Procedure 56(c) is met. "The judgment sought should be rendered if . . . there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the

1  allegations or denials of its pleadings but is required to tender evidence of specific facts in the
2  form of affidavits, and/or admissible discovery material, in support of its contention that the
3  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party
4  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
5  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
6  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
7  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
8  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
9  1436 (9th Cir. 1987).

10  In the endeavor to establish the existence of a factual dispute, the opposing party
11  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
12  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
13  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary
14  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
15  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
16  committee's note on 1963 amendments).

17  In resolving a summary judgment motion, the court examines the pleadings,
18  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
19  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
20  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
21  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
22  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
23  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
24  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
25  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
26  show that there is some metaphysical doubt as to the material facts . . . Where the record taken

1 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
2 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

III. Legal Standard for Eighth Amendment Claim

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show (1) that his medical needs were objectively serious; and (2) that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989); McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37. Moreover, it is not sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842.

4

1  It is nothing less than recklessness in the criminal sense—subjective
2 standard—disregard of a risk of harm of which the actor is <u>actually</u> aware. <u>Id.</u> at 838-42. "[T]he
3 official must both be aware of facts from which the inference could be drawn that a substantial
4 risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837.  Thus, a defendant
5 is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk
6 by failing to take reasonable measures to abate it." <u>Id.</u> at 847. "[I]t is enough that the official
7 acted or failed to act despite his knowledge of a substantial risk of serious harm." <u>Id.</u> at 842.  If
8 the risk was obvious, the trier of fact may infer that a defendant knew of the risk. <u>Id.</u> at 840-42.
9 However, obviousness <u>per se</u> will not impart knowledge as a matter of law.

10  Also significant to the analysis is the well established principle that mere
11 differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth
12 Amendment violation. <u>Jackson v. McIntosh</u>, 90 F.3d 330 (9th Cir. 1996); <u>Franklin v. Oregon</u>,
13 662 F.2d 1337, 1344 (9th Cir. 1981).

14  However, a physician need not fail to treat an inmate altogether in order to violate
15 that inmate's Eighth Amendment rights. <u>Ortiz v. City of Imperial</u>, 884 F.2d 1312, 1314 (9th Cir.
16 1989).  A failure to <u>competently</u> treat a serious medical condition, even if some treatment is
17 prescribed, may constitute deliberate indifference in a particular case. <u>Id.</u>

18  Additionally, mere delay in medical treatment without more is insufficient to state
19 a claim of deliberate medical indifference. <u>Shapley v. Nevada Bd. of State Prison Com'rs</u>, 766
20 F.2d 404, 408 (9th Cir. 1985).  Of note, although the delay in medical treatment must be harmful,
21 there is no requirement that the delay cause "substantial" harm. <u>McGuckin</u>, 974 F.2d at 1060,
22 citing <u>Wood v. Housewright</u>, 900 F.2d 1332, 1339-40 (9th Cir. 1990), and <u>Hudson</u>, 503 U.S. at
23 4-6.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends to
24 provide additional support for a claim of deliberate indifference; however, it does not end the
25 inquiry. <u>McGuckin</u>, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the
26 medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." McGuckin, 974 F.2d at 1061.

Superimposed on these Eighth Amendment standards is the fact that in cases involving complex medical issues where plaintiff contests the type of treatment he received, or lack thereof, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference. Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988). Thus, although there may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the treatment he received equated with deliberate indifference thereby creating a material issue of fact, summary judgment should be entered for the defendant. The dispositive question on this summary judgment motion is ultimately not what was the most appropriate course of treatment for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence, criminally reckless.

IV. Discussion

      A. Undisputed Facts

Plaintiff suffers from osteoarthritis, chronic lower back pain and navicular avascular necrosis. In addition, he lost part of his colon and one kidney due to gunshot wounds and walks with a cane.

During all relevant times, defendant Dudley worked as a physician's assistant at High Desert State Prison ("HDSP"). A physician's assistant works under a physician's license and supervision. Just as a physician would do, a physician's assistant renders medical care to a patient. Defendant Dudley was qualified to diagnose and treat illnesses. Defendant Dudley could also prescribe any medication that she was allowed to provide by her supervising physician.

On February 13, 2007, plaintiff transferred to HDSP from Folsom State Prison. On March 22, 2007, defendant Dudley saw plaintiff in order to follow-up with the medication plaintiff had been taking at Folsom. While at Folsom, plaintiff had been prescribed Tramadol, an

opiate, for pain.

On March 22, 2007, HDSP had a policy that narcotic pain medications were not available to inmates in the general population, such as plaintiff.[1]  Tramadol fell under this prohibition.  Accordingly, inmates at HDSP could obtain narcotic pain medication only if they were sick enough to be housed in the Correctional Treatment Center ("CTC"), the prison hospital.  Plaintiff did not qualify for housing in the CTC.  This policy was formulated by Chief Medical Officer Roche.

Pursuant to this policy, on March 22, 2007, defendant Dudley told plaintiff that she could not prescribe Tramadol for him.  On March 22, 2007, defendant Dudley consulted with the Chief Medical Officer and was instructed not to give plaintiff Tramadol.  Had defendant Dudley disobeyed the policy, she could have been fired.

On March 22, 2007, defendant Dudley offered plaintiff Motrin, Naprosyn or Tylenol.  There is an undated note in plaintiff's medical chart indicating that Motrin previously prescribed to him had been stopped because it caused plaintiff to suffer gastrointestinal bleeding.  The same note states that plaintiff was taking 30-40 Tylenol per day.  This quantity is an unsafe dosage.

Later in 2007, after defendant's last contact with plaintiff, HDSP hired a new Chief Medical Officer.  The new Chief Medical Officer changed the policy to allow for the prescription of narcotic pain medication to the general prison population.  However, plaintiff did not receive narcotic pain medication until he was transferred from HDSP.

---

[1] In his opposition, plaintiff argues that no such policy existed.  In support of this claim, he refers to the declaration of inmate Fred Leon Jackson who claims that from February 2007 through September 16, 2008, he was housed in the HDSP general population and received narcotics.  (Dkt. No. 75, at 11 of 33.)  As noted by defendant, this declaration shows that one inmate somehow obtained narcotic pain medication while in the general population.  How and why he got the narcotics and from whom is not explained.  This declaration does not raise a triable issue of fact regarding whether the policy existed prohibiting inmates in the HDSP general population from being prescribed narcotics.

B.  Analysis

Plaintiff raises two claims against defendant Dudley.  First, plaintiff argues that defendant Dudley acted with deliberate indifference to plaintiff's serious medical needs on March 22, 2007, when she failed to prescribe Tramadol, which plaintiff had previously received at Folsom State Prison.  In support of this claim, plaintiff argues that the drugs defendant Dudley offered in the alternative were not effective to treat his pain.  Second, plaintiff contends that the drugs defendant Dudley offered in the alternative were medically unacceptable because he had only one kidney.

Defendant moves for summary judgment on two different theories of qualified immunity.

Under the first theory, "[t]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, ___, 129 S. Ct. 808, 815 (2009).  The defendant bears the burden of establishing qualified immunity.  Crawford-El v. Britton, 523 U.S. 574, 586-87 (1998).

The Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), outlined a two-step approach to qualified immunity.  The first step requires the court to ask whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier, 533 U.S. at 201.  If the answer to the first inquiry is yes, the second inquiry is whether the right was clearly established: in other words, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 201.  In Pearson v. Callahan, the Supreme Court held that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  555 U.S. at ___, 129 S. Ct. at 818, 821.

1       In determining whether the law was clearly established, the inquiry focuses on the precise circumstances of a particular case as well as the state of the law at the time of the alleged violation. Fogel v. Harris, 531 F.3d 824, 833 (9th Cir. 2008). "We engage in an 'objective but fact-specific inquiry.'" Id., quoting Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007). The standard is objective. Id.

      The undersigned first considers, when taken in the light most favorable to plaintiff, whether the facts alleged show that defendant's conduct violated a constitutional right. In the objections, defendant argues that the original findings and recommendations addressed only qualified immunity and failed to address defendant's additional contention that she was not deliberately indifferent to a serious medical need. The first prong of the qualified immunity analysis "mirrors the substantive summary judgment decision on the merits." Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002). Accordingly, defendant's claim that the undersigned failed to address her contention that she did not violate plaintiff's Eighth Amendment rights is without merit.

      Defendant argues that in denying plaintiff Tramadol, she did not act with deliberate indifference because she was following the policy that prohibited her from prescribing narcotics and that she offered plaintiff alternative pain relievers.

      Plaintiff has not offered any expert evidence that the drugs offered in the alternative were not appropriate based on the fact that he had only one kidney. Plaintiff's own opinion is not sufficient evidence to support this claim. For these reasons, the undersigned does not find that plaintiff has met his burden as to this claim. Accordingly, defendant Dudley should be granted summary judgment as to plaintiff's claim that the alternative drugs defendant Dudley prescribed were not appropriate for someone with only one kidney.

      However, plaintiff's failure to provide expert evidence does not end the entire inquiry. It is undisputed that plaintiff had serious medical problems. It is clear from the record that these medical problems caused plaintiff to suffer great pain, as he was prescribed Tramadol,

a narcotic pain reliever, by a physician at Folsom State Prison. Defendant's decision to deny plaintiff the narcotic pain medication he had previously been prescribed was not based on an assessment of his medical needs but pursuant to the no-narcotics policy.

Moreover, the record demonstrates that two of the three drugs offered by defendant Dudley in the alternative had not been effective in treating plaintiff's pain in the past. In her objections, defendant argues that there is no evidence that she knew that Motrin and Tylenol were ineffective or why plaintiff had previously abused them.

It is undisputed that defendant was aware of plaintiff's medical chart indicating that he had previously been prescribed Motrin, but the medication was stopped because it caused plaintiff to suffer gastrointestinal bleeding. The same note states that plaintiff was taking 30-40 Tylenol per day. At his deposition, plaintiff testified that the reason he took so many Tylenol was "that is the only way that it was helping me." (Plaintiff's Deposition, at 23.) At his deposition, plaintiff also testified that on March 22, 2007, he told defendant Dudley that "you must not be reviewing my file because [Tylenol] is not going to do nothing. This is not going to do nothing for me." (Id.)

The undersigned finds that a reasonable inference from plaintiff's medical records is that plaintiff "abused" Tylenol and Motrin, because these drugs did not effectively treat his pain. The fact that plaintiff had been prescribed a narcotic pain reliever supports this finding. These reasonable inferences, combined with plaintiff's deposition testimony that he told defendant that the Tylenol was not working, indicate that defendant is not entitled to summary judgment on grounds that she was unaware of the past ineffectiveness of these drugs. In her declaration, defendant does not address why she did not ask plaintiff about his "abuse" of these drugs, which the undersigned would expect a reasonable physician's assistant to do.

In her objections, defendant argues that plaintiff's explanations at his deposition are irrelevant to whether defendant's course of action was deliberately indifferent to a serious medical need based upon the facts as she knew them. Defendant suggests that plaintiff's

1  testimony is self-serving, made years after the facts.  Plaintiff's deposition testimony is evidence
2  in this case.  Plaintiff's deposition testimony is not so wholly incredible that it must be
3  disregarded.  Defendant's argument that plaintiff's deposition testimony should be ignored is
4  without merit.

5         Based on plaintiff's deposition testimony and his medical records, as well as
6  defendant's failure to explain why she did not ask plaintiff about his apparent "abuse" of Tylenol
7  and Motrin, the undersigned finds that defendant is not entitled to summary judgment on grounds
8  that she did not know that these drugs did not effectively treat plaintiff's pain.

9         Defendant also argues that she is entitled to summary judgment because there is
10 no evidence in the record that plaintiff had previously been offered Naproxyn.  Defendant argues
11 that there is no evidence that Naproxyn would have failed to relieve plaintiff's pain.

12        It is undisputed that Naproxyn is not a narcotic.  Naproxyn, like Tylenol and
13 Motrin, is used for the treatment of mild to moderate pain.  See  http://www.medicinenet.com/
14 naproxen/article.htm.   The fact that plaintiff had previously been prescribed a narcotic by a
15 doctor at Folsom Prison indicates that he suffered from more than mild to moderate pain.  Based
16 on the record before the undersigned, it is reasonable to infer that Naproxyn was not an
17 appropriate pain reliever for plaintiff.  Considering the previous ineffectiveness of Tylenol and
18 Motrin, and the effectiveness of narcotics in treating plaintiff's pain, defendant has not met her
19 burden of demonstrating that she did not act with deliberate indifference by offering plaintiff
20 Naproxyn.  Based on the record, including the fact that  defendant offered these drugs pursuant to
21 a no-narcotics policy rather than based on an assessment of plaintiff's medical needs, defendant
22 does not meet her summary burden by merely asserting that there was no evidence that Naproxyn
23 was appropriate for plaintiff.  Accordingly, defendant is not entitled to summary judgment on
24 grounds that there is no evidence that Naproxyn was not adequate to treat plaintiff's pain.

25        In her objections, defendant further argues that plaintiff's insistence that he
26 receive a narcotic amounts to a mere difference of opinion concerning appropriate medical care.

As discussed above, the decision not to prescribe narcotics was based on a policy rather than an evaluation of plaintiff's medical needs. Under these circumstances, defendant has not demonstrated a mere difference of opinion between herself and the Folsom doctor who had previously prescribed narcotics.

Taken in the light most favorable to plaintiff, these facts could demonstrate that defendant violated plaintiff's right to adequate medical care by failing to prescribe Tramadol.

Having found that the facts could demonstrate that defendant Dudley violated plaintiff's Eighth Amendment right to adequate medical, the undersigned next considers whether it would have been clear to a reasonable physician's assistant on March 22, 2007, that denying plaintiff Tramadol pursuant to the no-narcotics policy was unlawful. Defendant argues that there is no clearly established law holding that defendant's upholding the no-narcotics policy and prescribing alternative pain medication is unconstitutional.

In essence, defendant argues that plaintiff does not have a clearly established right to narcotics. Defendant's characterization of the issue is incorrect. Rather, the issue is whether plaintiff had a clearly established right to adequate pain relief. Certainly, in March 2007 plaintiff had a constitutional right to adequate pain relief. Based on the present record, the undersigned finds that it would have been clear to a reasonable officer that denying plaintiff Tramadol, which had previously been prescribed by a doctor at Folsom State Prison, and instead prescribing pain medication which the medical records suggested were ineffective, was unlawful. Plaintiff's claim that he allegedly told defendant Dudley that Tylenol did not work supports this finding. For these reasons, defendant is not entitled to summary judgment based on this theory of qualified immunity.

Under the second theory of qualified immunity, defendant argues that she is immune because she was following a policy. The Ninth Circuit has found that a defendant is entitled to qualified immunity if he or she acts pursuant to official prison policies if the policies are not "patently violative of constitutional principles." Brown v. Mason, 288 Fed.Appx. 391,

392-93 (9th Cir. 2008). "[W]hen a public official acts in reliance on a duly enacted statute or ordinance, that official ordinarily is entitled to qualified immunity." Dittman v. California, 191 F.3d 1020, 1027 (9th Cir. 1999). However, reliance upon a statute, regulation, or official policy does not render the officer's conduct per se reasonable. Dittman, 191 F.3d at 1027. The existence of a statute or ordinance authorizing particular conduct is a factor that militates in favor of the conclusion that a reasonable official would find that conduct constitutional because officers are ordinarily entitled to rely on the assumption that the legislature has considered the views of legal counsel and concluded that the regulation or policy is a valid and constitutional exercise of authority. Grossman v. City of Portland, 33 F.3d 1200, 1209 (9th Cir. 1994). However, qualified immunity will not be granted to a public official who enforces a statute, regulation, or policy that is "'patently violative of fundamental constitutional principles.'" Brown, 288 Fed.Appx. at 392-393 (quoting Grossman, 33 F.3d at 1209).

In her objections, defendant argues that in Grossman the Ninth Circuit stated that qualified immunity would *not* be available to officials who followed policies such as those enacted in the Holocaust: "On the other hand, as historical events such as the Holocaust and the My Lai massacre demonstrate, individuals cannot always be held immune for the results of their official conduct simply because they were enforcing policies or orders promulgated by those with superior authority." 33 F.3d at 1209. Defendant argues that following a no-narcotics policy is not equivalent to an official enforcing the policies of the Holocaust and My Lai massacre.

The undersigned does not agree with defendant's reading of Grossman. In that case, the Ninth Circuit did not limit official liability in the manner defendant suggests. In Grossman, the Ninth Circuit stated that public officials are entitled to qualified immunity unless the at-issue ordinance or regulation is "patently violative of fundamental constitutional principles." 33 F.3d at 1210. A regulation can be patently violative of fundamental constitutional principles yet not involve circumstances such as those that existed in the Holocaust or the My Lai massacre.

Under the Eighth Amendment, inmates have a constitutional right to adequate pain medication. A blanket policy denying narcotic pain medication to inmates in the general population regardless of medical need violates this right. The undersigned finds that such a policy is "patently violative of fundamental constitutional principles" because it causes inmates to suffer needlessly from great pain when their pain could be adequately treated by narcotics.

In her objections, defendant argues that there is no Ninth Circuit case holding that such a policy as the one at-issue in the instant case is unconstitutional. While the Ninth Circuit has not specifically addressed the issue of a prison no-narcotics policy, it has on numerous occasions affirmed that inmates have an Eighth Amendment right to adequate pain medication. For example, in Looman v. Wick, 329 Fed. Appx. 729 (9th Cir. 2009), the Ninth Circuit reversed a district court finding that the prisoner's allegation that he was deprived of his pain medication for up to eight hours the day after he had hernia surgery was "not objectively sufficiently serious to acquire constitutional dimension." 329 Fed.Appx. 729 at *1. The Ninth Circuit found that "under these circumstances, 'the severe pain' that Looman allegedly suffered during the delay stated a claim of an objectively, sufficiently serious deprivation under the Eighth Amendment." Id.

In Prewitt v. Roos, 160 Fed. Appx. 609 (9th Cir. 2009), a case involving a pretrial detainee, the Ninth Circuit found that the failure to give the detainee prescribed pain medication, which caused his pain to be considerably exacerbated, violated the detainees constitutional rights. The undersigned has also found Ninth Circuit cases evaluating prisoners claim of inadequate pain medication and finding in the favor of prison officials. Thus, the appropriate conclusion is that the Ninth Circuit has found that inmates (and pretrial detainees whose claims are evaluated under the same legal standard) have the right to adequate pain medication. Defendant's suggestion that no such right exists is without merit.

Accordingly, for the reasons discussed above, defendant is not entitled to qualified immunity as to plaintiff's claim that she violated his Eighth Amendment rights when she

enforced the no-narcotics policy by refusing to prescribe Tramadol.[2]  The issues raised in this action should be decided by a jury.

Accordingly, IT IS HEREBY RECOMMENDED that defendant's summary judgment motion (Dkt. No. 69) be granted as to the claim that the drugs she prescribed were inappropriate for someone with only one kidney; and defendant's motion should be denied in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  June 20, 2011

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

frank2259.sj

---

[2]  While the undersigned recognizes that defendant Dudley, as a physician's assistant, may have been in a difficult position because of the no-narcotics policy, as a medical provider she could not merely rely upon following a policy when following it, as here, would result in denying plaintiff necessary pain medication.